## Reeder, Appellant, *v.* Metropolitan Life Insurance Company.

Argued January 20, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Horace Michener Schell,* with him *J. Fred Katzmaier* and *Harry R. Matten,* for appellant.

*Harry R. Gibson,* with him *John G. Candor,* for appellee.

OPINION BY MR. JUSTICE DREW, January 31, 1941:

Plaintiff, Margaret V. Reeder, as the named beneficiary, brought this action in assumpsit to recover the amount of a policy of insurance issued by defendant upon the life of her husband, George L. Reeder. In its affidavit of defense, defendant admitted the allegations of the statement of claim as to the execution and de-

livery of the policy, the payment of the premiums thereon, and the death of the insured, but by way of New Matter resisted the claim on the ground that material statements in the application were untrue, false and fraudulent, and were known to be such by the insured. To plaintiff's reply, a motion for judgment for want of its sufficiency was filed. The learned court below, after argument, directed the entry of judgment for defendant, which we now affirm on this appeal by plaintiff.

The misrepresentations upon which defendant relied in its affidavit of defense are contained in the following questions and answers appearing in the application: "11. Have you ever suffered from any ailment or disease of . . . (b) The Heart or Lungs?" Answer: "No." "12. . . . (g) Have you consulted a physician for any ailment or disease not indicated in your above answers?" Answer: "Yes." "Name of each Ailment, Disease or Injury." Answer: "Indigestion." "No. of attacks." Answer: "One." "Date." Answer: "10-35." "Duration." Answer: "2 days." "Severity." Answer: "Moderate." "Results, and if within five years, name and address of every Physician consulted." Answer: "Good.—P. L. Ridall, 51 W. 3rd St." "13. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? If none, so state." Answer: "None." The policy was executed and issued June 3, 1936, on an application made May 19, 1936, by the insured, who died April 28, 1938, of coronary thrombosis. In her reply, plaintiff admits that the insured had an x-ray taken of his abdomen by Dr. Lloyd E. Wurster of the Williamsport Hospital on or about October 11, 1935, at the suggestion of Dr. P. L. Ridall, who had examined the insured upon the same day and had diagnosed his ailment as one of nervousness and gastro-intestinal disorder; that insured had also consulted Dr. Marc W. Bodine relative to his general

physical condition on or about October 17, 1935, as well as on several other occasions thereafter, and that this physician had advised the insured to have an examination made of his heart; and that on or about October 17, 1935, the insured had been examined by Dr. H. L. Tonkin.

Plaintiff, in her endeavor to overcome the detrimental effect upon her claim of the misrepresentations thus contained in the application, averred that these false answers had been given by inadvertence and without any intention of concealment or desire to withhold any facts. While it is generally for the jury to determine the question as to the truth or falsity of the answers in the application, nevertheless where, as here, the admissions contained in the pleadings establish facts warranting the avoidance of the policy, the court may enter judgment without the intervention of a jury: *Indovina v. Metropolitan Life Ins. Co.*, 334 Pa. 167; *Evans v. Penn Mutual Life Ins. Co.*, 322 Pa. 547. In the present case plaintiff admits in her reply that the insured had consulted three physicians for his general physical condition, had been advised by one to have his heart examined, and had also had his stomach x-rayed by a prominent roentgenologist. Therefore, how can it reasonably be claimed that when the insured signed the application that he had completely forgotten or innocently overlooked these frequent consultations or examinations for obviously more than slight or mere temporary indispositions within the previous period of but seven months. See *N. Y. Life Ins. Co. v. Brandwene*, 316 Pa. 218. Relative to such matters, it was said, in *Bailey v. Pacific Mutual Life Ins. Co.*, 336 Pa. 62, at pp. 65-66: "The frequency of these consultations with specialists, within such a short time before the application for the policy and so shortly before the insured's death, refutes the argument of plaintiff that these visits were made by insured, not because of any illness, but merely for the purpose of a general physical check-up.

. . . Inquiries as to prior medical attendance are material to the risk and false answers thereto must of necessity permit the insurer to avoid the policy, not only because of a failure to report the exact nature of previous illness, but also because of a failure to furnish the information which would have enabled the insurer to protect itself by making further investigations: *Rigby v. Metropolitan Life Ins. Co.*, 240 Pa. 332; *Boltz v. Metropolitan Life Ins. Co.*, 128 Pa. Superior Ct. 147." We are satisfied that these false answers are clearly sufficient to show the required bad faith on the part of the insured in the making of the application.

There is no merit in the contention of the plaintiff that since the application attached to the policy states that it is for $10,000 of insurance and the policy actually issued is for $6,000, therefore, the application is not the one for the policy issued and should not be considered in interpreting the contract; nor in plaintiff's further argument that the application is not complete, in that there is no Part C attached, although the following printed statement appears on the application: "Statements of or comments by Medical Examiner must be recorded in Part C." It need only be said in this connection that throughout her pleadings, plaintiff pleaded the policy and the application here in question as the entire contract upon which she based her action, and at no time until now did she claim that the application here involved was not the one upon which the policy issued or the absence of Part C. Moreover, the issuance of a policy of insurance merely in an amount less than that set forth in the application forms no basis for concluding that the application is not the one upon which the policy issued. Part C, which is the confidential statement of the medical examiner to the company, is not required to be attached to the policy. In *Moncur v. Western Life Ind. Co.*, 269 Pa. 213, the present Chief Justice speaking for this Court, said (p. 215): "What the Act of 1881 requires to be attached to the policy is

a correct copy of the application 'as signed by the applicant': and, in this case, everything over his signature, to which it related, was attached to the policy. He could not be affected by anything that was certified to the company by the medical examiner for the reason that the medical examiner was not his agent, but the agent of the company."

Judgment affirmed.